UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
CDX DIAGNOSTICS, INC. et al., :
:
Plaintiffs, :     13-cv-05669 (NSR)
-against- :     OPINION AND ORDER
:
US ENDOSCOPY GROUP, INC. et al., :
:
Defendants. :
-----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

Plaintiffs CDX Diagnostics ("CDX") and Shared Medical Resources, LLC ("SMR") filed this patent infringement suit against U.S. Endoscopy and John Does 1-30 on August 13, 2013. Before the Court is Defendants' motion to stay this litigation pending the resolution of three petitions for *inter partes* review ("IPR") filed by Defendants before the United States Patent and Trademark Office's ("PTO") Patent and Trial Appeal Board ("PTAB") on April 15, 2014. For the following reasons, Defendants' motion is DENIED.

I.  **Background**
    a.  **Facts**

CDX is the owner or co-owner of the three patents at issue in this action. Patent No. 6,676,609, entitled "Retractable Brush for Use With Endoscope for Brush Biopsy" ("'609 Patent"), was issued to CDX on January 13, 2004. Patent No. 7,004,913, also entitled "Retractable Brush for Use With Endoscope for Brush Biopsy" (the "'913 Patent"), was issued to CDX on February 28, 2006. Patent No. 6,258,044, entitled "Apparatus and Method for Obtaining Transepithelial Specimen of a Body Surface Using Non-Lacerating Technique" ("'044 Patent"), was issued to CDX and SMR on July 10, 2001. Plaintiffs allege that two of U.S.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/20/2014

1

Endoscopy's products, the Infinity Sampling Device and the Infinity Cytology Device, infringe the '069, '913, and '044 Patents.

Plaintiffs filed their complaint ("Complaint") on August 13, 2013. Defendants answered with counterclaims on January 6, 2014, to which Plaintiffs answered on February 14, 2014. The parties appeared before the Court on April 3, 2014 at a pre-motion conference, during which Defendants notified Plaintiffs' counsel and the Court that it would file IPR petitions. On April 15, 2014, Defendants filed IPR petitions. Defendants subsequently filed the present motion to stay the proceedings in district court pending the resolution of the IPR petitions before the PTO.

### b. *Inter Partes* Review Procedure

The *inter partes* review procedure was recently introduced by the Leahy-Smith America Invents Act as a replacement for the previous *inter partes* examination. Through IPR, the PTAB reviews the patentability of one or more claims of a patent based on certain grounds. 35 U.S.C. 311(b). IPR is initiated by "a person who is not the owner of a patent," 35 U.S.C. § 311(a), to attempt to determine that the challenged claims are invalid under 35 U.S.C. §§ 102 (prior art) and/or 103 (obviousness). The petitioner may rely "only on . . . prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). The patent owner may file a response setting forth its position as to why IPR should not be instituted or may waive the right to respond in order to expedite the process. 37 C.F.R. § 42.107(a)-(b). The PTAB may decide to institute IPR if there is a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). That decision must be made within 3 months of the patent holder's response to an IPR petition or 3 months from the last day that a patent holder could respond to the petition. 35 U.S.C. § 314(b).

If IPR is instituted, the proceeding is conducted before a panel of three "persons of competent legal knowledge and scientific ability," deemed Administrative Patent Judges. *See* 35

U.S.C. §§ 6(a)–(c), 311. IPR allows for the parties to engage in limited discovery and respond to arguments. It also gives the parties a right to an oral hearing. 35 U.S.C. § 316(a)(10). The final decision must be made within 1 year of the decision to commence IPR, with the possibility that the proceeding may be extended for an additional 6 months for good cause. 35 U.S.C. § 316(a)(11).

"In enacting the AIA, Congress sought 'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs' and 'to create a timely, cost-effective alternative to litigation.'" *PersonalWeb Techns., LLC v. Facebook, Inc.*, Case Nos.: 5:13–CV–01356–EJD; 5:13–CV–01358–EJD; 5:13–CV–01359–EJD, 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) (quoting *Changes to Implement Inter Partes Review Proceedings, Post–Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48680–01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.)). The court in *PersonalWeb* noted three advantages to the new IPR procedure over the previous reexamination procedure: (1) a maximum of 18 months from beginning to conclusion; (2) the decision to institute IPR indicates that at least one of the claims may be modified or cancelled, *see* 35 U.S.C. § 314(a); and (3) IPR's estoppel requirement precludes the petitioner from asserting an invalidity claim in a civil litigation "on any ground that the petitioner raised or reasonably could have raised during that inter partes review," 35 U.S.C. § 315(e)(2), resulting in streamlined litigation. *PersonalWeb*, 2014 WL 116340, at *2. As a point of reference, "[i]n fiscal year 2013, the PTO instituted IPR on approximately 82.3% of the petitions it received." *Id*. at *3.

## II. Motion to Stay Legal Standard

District courts have the inherent power to manage their dockets, which includes issuing a stay pending the conclusion of review proceedings before the USPTO. *TouchTunes Music Corp.*

*v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 176 (S.D.N.Y. 2009); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). Courts generally consider three factors in deciding a motion to stay pending review by the PTO: "(1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will prejudice the nonmoving party." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 177 (S.D.N.Y. 2009); *see also Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030 (C.D. Cal. May 2, 2013) ("While inter partes review is new, at least one court has already analyzed motions to stay pending inter partes review using the framework applicable to motions to stay pending reexamination, and the Court does so now."). "These factors are not exclusive, however, and in the end, an overarching consideration of the circumstances in their totality governs." *Rensselaer Polytechnic Inst. v. Apple, Inc.*, Civil Action No. 1:13–CV–0633 (DEP), 2014 WL 201965, at *3 (N.D.N.Y. Jan. 15, 2014).

In the Northern District of California, a district well-versed in patent litigation and issues, *see Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 11 Civ. 2930(LBS), 2012 WL 1066798, at *1 (S.D.N.Y. Mar. 24, 2012), "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *PersonalWeb*, 2014 WL 116340, at *3. However, "[t]here is no *per se* rule that patent cases should be stayed pending [IPR], because such a rule would invite parties to unilaterally derail litigation." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *3 (N.D. Cal. June 6, 2007) (citations and internal quotation marks omitted).

### III. Discussion
#### a. Simplification of the Issues

The first factor to consider is whether granting a stay will result in a simplification of the issues in this litigation. Granting a stay may simplify the district court proceedings because "waiting for the outcome of the [IPR] could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C–94–20775 RPA (EAI), 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995). It is also true that a party will be estopped from raising that the "claim[s are] invalid on any ground that [it] raised or reasonably could have raised during . . . inter partes review." 35 U.S.C. § 315. Thus, this might suggest that the simplification factor weighs in favor of a stay. However, there is another consideration.

The PTO has not yet determined if it will institute IPR for the three filed petitions. At this time, "the fact that the petitions have not yet been granted or denied makes it more difficult to predict whether the issues are likely to be simplified." *Universal Electronics*, 943 F. Supp. 2d at 1033. Some courts have recognized that the "risk of delay is, on balance, prudent in light of the prospect of benefiting from the PTO's unique expertise on a highly complex topic." *Rensselaer Polytechnic*, 2014 WL 201965, at *5; *see also Evolutionary Intelligence LLC*, 2013 WL 6672451, at *7 ("[I]f the PTAB rejects the IPR request, the stay will be relatively short."). On the other hand, "[s]everal courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR." *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *5; *see also Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12–cv–1727–Orl–37DAB, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13–cv–346–bbc, 2013 WL 6044407, at *3 (W.D. Wis. Nov. 14, 2013) (court stated that there was "an additional layer of doubt whether the [IPR]

will even occur"); *Davol, Inc. v. Atrium Medical Corp.*, Civil Action No. 12–958–GMS, 2013 WL 3013343, at *2 (D. Del. Jun. 17, 2013) (court found that the fact that PTO had yet to determine whether to institute IPR proceedings weighed against granting a stay).

Defendants filed the three IPR petitions on April 15, 2014, and therefore, the PTO's initial decision is not due until October 15, 2014, unless Plaintiffs respond earlier than the allotted time.[1] During the period of time between the filing of IPR petitions and the decision to institute proceedings, the Court and the parties are essentially treading water. If the Court were to issue a stay, this case would be left languishing on the Court's docket with no progress being made. *See Automatic Mfg. Sys.*, 2013 WL 1969247, at *3 ("The patent owner should be able, if it desires, to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the USPTO takes an interest in reviewing the challenged claims."). Therefore, although IPR proceedings may serve to narrow the issues in the pending litigation, it is unclear at this stage whether the PTO will institute proceedings on any or all of the petitions. Thus, the factor weighs slightly in favor of denying a stay.

    b. **Stage of the Proceedings**

This action is in the very early stages of its lifespan. Little to no discovery has taken place.[2] This factor weighs against granting a stay where proceedings at the district court have advanced substantially, in which case "district courts commonly deny motions to stay pending [IPR]." *TouchTunes*, 676 F. Supp. 2d at 177. The opposite is the case here and therefore, this factor weighs in favor of a stay. *See Davol*, 2013 WL 3013343, at *6. However, "[e]ven where a

---

[1] Plaintiffs indicated in the Joint Civil Case Management Plan and Scheduling Order that they intended to file a response to the IPR petition. That response is due by July 15, 2014. *See* 37 C.F.R. § 42.107(a)-(b). The PTO must make its decision within 3 months of July 15, which would make the final decision on whether to institute IPR with respect to the three petitions due on or before October 15, 2014. *See* 35 U.S.C. § 314(b).
[2] *See* Joint Civil Case Management Plan and Scheduling Order, Docket No. 17.

case is in its early stages of litigation, a stay should still be denied if it offers limited potential to narrow the issues in the case and the non-moving party will suffer undue prejudice by the delay." *TouchTunes*, 676 F. Supp. 2d at 178.

### c. Undue Prejudice

The final factor for the court to consider is the undue prejudice to Plaintiffs in the event the stay is granted. While it is clear that granting a stay would delay the present litigation, "[m]ere delay in the litigation does not establish undue prejudice." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033 (C.D. Cal. 2013).

Defendants have been forthcoming with the Court and Plaintiffs with their intention to file IPR petitions to the PTO and a request for a motion to stay in this proceeding. There has been nothing to indicate that the timing or actions of Defendants evidences an intention to prejudice Plaintiffs or somehow game the system. *See, e.g.*, *ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, C.A. No. 12–054–GMS–MPT, 2013 WL 663535, at *5 (D. Del Feb. 25, 2013) ("[T]he less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical.").

One sub-factor that courts look to in determining whether there is prejudice to the non-moving party is whether the parties are competitors in the marketplace. *See ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) ("[P]rejudice [to the patentee] is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant."). "An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors," Davol, 2013 WL 3013343, at *3, because "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred,

7

including the potential for loss of market share and an erosion of goodwill." *Neste Oil Oyj v. Dynamic Fuels LLC*, Civil Action No. 12–662–GMS, 2013 WL 424754, at *2 (D. Del. Jan 31, 2013).

     Defendants argue that the parties are not direct competitors. CDX is a supplier of laboratory services. Pl. Opp'n Br. 6. Defendants state that CDX buys the brushes that are the subject of this litigation from a third-party supplier and then provides those brushes to customers as part of a specimen kit. U.S. Endoscopy is in the business of making endoscopic accessories, including brushes. Complaint ¶ 4. It cannot be said that the parties are direct competitors because they each perform different functions within the marketplace. At the same time, it cannot be said that parties are somewhat in competition. Plaintiffs' use of the brushes in question is essential to its operations. Medical professionals seemingly have a choice between purchasing Defendants' brushes and using Plaintiffs' services, which include Plaintiffs' brush and coordinating laboratory services. Thus, the relationship between the parties favors not granting a stay because the prejudice to Plaintiffs' would not be easily remedied through monetary damages. In addition to the potential harm caused by the sale of an allegedly infringing product, Plaintiffs argue that its goodwill would be damaged during any period of time during which Defendants are allowed to continue selling their products.

     Although Defendants argue that the failure of Plaintiff to seek a preliminary injunction is an indication that the stay should be granted, this Court instead sides with the Northern District of California when it stated that on a "motion to stay, the Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction]." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–CV–02863–EJD, 2011 WL 3267768, at *6 (N.D. Cal. July 28, 2011). "The fact that Plaintiff did not seek a

preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case." *Universal Elecs.*, 943 F. Supp. 2d at 1034.

After considering the factors, the Court finds that the totality of circumstances do not warrant issuing a stay at this time. Especially in light of the fact that the PTO has not yet decided whether to institute proceedings, the Court finds that Plaintiffs will be unduly prejudiced from a stay. At the time the PTO renders its decision, the Court may be in a better position to address the issue of a stay, provided such an application is made.

## IV.  Conclusion

Accordingly, Defendants' motion to stay litigation pending *Inter Partes* Review is DENIED. The Clerk of the Court is respectfully requested to terminate the motion, Docket No. 19.

Dated: June 20, 2014
White Plains, New York

SO ORDERED:

_____ 6/20/14
NELSON S. ROMÁN
United States District Judge